UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARQUISE GARY-BAILEY,

    Plaintiff,

        v.                              No. 3:14-cv-1535(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____X

## **RECOMMENDED RULING ON PENDING MOTIONS**

Plaintiff Clarence Smith has filed this appeal of the adverse decision of the Commissioner of Social Security denying his application supplemental security income ("SSI"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 17]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 18]. The undersigned heard oral argument on January 11, 2016. For the reasons set forth below, the Court recommends that the decision of the Commissioner should be affirmed.

### **Legal Standard**

The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

1

**Background**

Plaintiff's SSI application alleged a disability onset date of February 22, 2011. His application was denied initially and upon reconsideration. A hearing was held before Administrative Law Judge Lisa Groeneveld-Meijer (the "ALJ") on October 22, 2012. The ALJ held a supplemental hearing on November 14, 2012. On January 25, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for appeals purposes. This action followed.

Plaintiff was thirty-one years old on the alleged onset date. He has a high school education and no past relevant work experience. At oral argument, the parties stipulated to the facts as set forth in Plaintiff's brief and Defendant's brief, which the Court adopts and incorporates by reference herein.

**The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 17). At step two, the ALJ found the following severe impairments: degenerative disc disease of the lumbar spine with a broad based disc bulge at L5/S1 per 2007 MRI; obesity; and an anxiety disorder. (R. 17). At step three, the ALJ found that these impairments, alone or in combination, did not meet or equal the severity of one of the listed impairments. (R. 17-18). The ALJ then found that Plaintiff retained the following residual functional capacity[1]:

> Plaintiff can perform sedentary work. Further, he can occasionally perform postural activities such as bending, stooping, crawling, climbing, kneeling, and climbing ramps and stairs. He can never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to hazards such as moving machinery and unprotected heights. He requires low stress jobs, defined as those requiring

---

[1] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his limitations. 20 C.F.R. § 416.945(a)(1).

>simple decisions and including few changes day to day.  He should not work with the general public.

(R. 18-22).  At step four, the ALJ found Plaintiff had no past relevant work.  (R. 22).  Finally, at step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that Plaintiff could perform the positions of addresser, surveillance system monitor, and tube operator, and that these positions existed in significant numbers in the national economy.  (R. 23-25).  Accordingly, the ALJ found Plaintiff to be not disabled.

## Discussion

Plaintiff presents three issues on appeal.

1. <u>Does substantial evidence support the ALJ's RFC finding?</u>

Plaintiff first asserts that the RFC was not supported by substantial evidence.  The Second Circuit has instructed that an assessed RFC is not required to "perfectly correspond with any of the opinions of medical sources."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Rather, an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  *Id.* (citing *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).  Here, the ALJ's RFC assessment took into account all of the evidence before her – including treatment records, Plaintiff's testimony, and opinion evidence – resolved any conflicts in this evidence, and explained how it was the basis for the RFC assessment.  Contrary to Plaintiff's assertions, the Court finds that the RFC assessment is supported by substantial evidence.

Plaintiff argues that the RFC finding is inconsistent with the report of Dr. Guarnaccia, who performed a consultative exam on March 22, 2011.  Specifically, Plaintiff claims that Dr. Guarnaccia did not opine specially on whether Plaintiff could perform the requirements of sedentary work, and did not address whether he could perform work on a regular basis.  The

Court disagrees. Dr. Guarnaccia's opinion supports an RFC for sedentary work.[2] For example, he found full motor strength and range of motion in the upper extremities, 4/5 muscle strength in the lower extremities and full range of motion, and intact sensation and balance. (R. 368). While Dr. Guarnaccia did observe that Plaintiff could barely walk on his heels and toes and could not stand on one foot for more than five seconds, other evidence in the record did not reveal these same limitations, and the ALJ was entitled to resolve this conflicting evidence. The Court finds that the ALJ properly evaluated Dr. Guarnaccia's opinion, and that it supports the assessed RFC.

Plaintiff's claims the Commissioner's argument that the RFC is supported by substantial evidence, including by treatment notes of Dr. Anderson and the opinions of the two state agency medical consultants, relies on an explanation posited by defense counsel and not the ALJ. This amounts, Plaintiff argues, to impermissible *post hoc* rationalization. It is clear that "[a]reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (internal quotation marks omitted). This is not an instance of *post hoc* rationalization, however, as the ALJ analyzed Dr. Anderson's treatment notes in her explanation of why the assessed RFC is appropriate. *See* R. 20-22. The ALJ also specifically states that she has evaluated and given limited weight to the opinions of the state agency medical consultants.[3] *See* R. 21. The Court does not find that the Commissioner is

---

[2] Sedentary work involves the following:
> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

[3] The state agency doctors found Plaintiff capable of light work. (R. 140-41, 151-52). The ALJ gave these opinions limited weight because she determined that more recent evidence supported

creating *post hoc* rationalizations to explain the ALJ's consideration of evidence not apparent from the ALJ's decision itself. *See Juckett ex rel. K.J. v. Astrue*, No. 09-cv-708 FJS/VEB, 2011 WL 4056053, at *6 (N.D.N.Y. June 29, 2011) *report and recommendation adopted sub nom. Juckett v. Astrue*, No. 1:09-CV-708 FJS/VEB, 2011 WL 4055296 (N.D.N.Y. Sept. 12, 2011). When a court can "glean the rationale of an ALJ's decision," as here, the ALJ is not required to mention every item of evidence before her. *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

    2. <u>Did the ALJ fail to identify and resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles?</u>

Second, Plaintiff argues that the ALJ failed to identify and resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). While an ALJ must resolve conflicts between VE testimony and the DOT, *see Policy Interpretation Ruling: Titles II & Xvi: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4P (S.S.A. Dec. 4, 2000), in this case Plaintiff has not shown any conflict which needed to be resolved. Plaintiff asserts that the VE's testimony regarding reasoning levels for the positions identified as ones Plaintiff could perform conflicts with the DOT definition of work at reasoning level one as described in the RFC. The problem with this argument is that the RFC, which limits Plaintiff to "low stress jobs, defined as those requiring simple decisions and including few changes day to day," does not necessarily limit Plaintiff to reasoning level one positions. The Second Circuit has found that a limitation to only short, simple instructions is consistent with jobs requiring level 2 or 3 reasoning. *See Jones-Reid*

---

a finding of sedentary work. (R. 21). Although the ALJ found that Plaintiff was more restricted, the state agency opinions support the ALJ's findings to the extent that they are consistent with a finding that Plaintiff was not able to do *more than* light work (as opposed to having limitations that cause him to be incapable of even sedentary work). A finding a claimant can do light work is generally a finding that the person can do sedentary work as well. 20 C.F.R. § 416.967(b).

*v. Astrue*, 934 F. Supp. 2d 381, 409 (D. Conn. 2012) *aff'd,* 515 F. App'x 32 (2d Cir. 2013).  In *Jones-Reid*, the claimant was limited to "tasks involving short, simple instructions in an environment with few workplace changes and no public contact."  *Id.* at 404.  There is no meaningful distinction between that RFC and the one in the instant matter such that a different result is warranted here.  If anything, the RFC in *Jones-Reid* is more limited than the one in this case.  There is no error.

      3.  <u>Did the ALJ properly rely on the VE's testimony at step five?</u>

Finally, Plaintiff argues that the ALJ failed to question the reliability of the VE's testimony and improperly attempted to rehabilitate the VE's testimony.  The Court has fully deliberated on these arguments and finds them without merit.

The VE, after considering the hypotheticals presented by the ALJ, identified jobs that Plaintiff could perform by DOT name and code number.  Since the DOT just defines jobs, the VE needed a method to determine how many such jobs were available.  Generally, VEs may use Bureau of Labor Statistics ("BLS") data as the basis for these numbers.  Here, the VE used a computer program called SkillTran to determine the number of jobs existing in the local and national economy for the positions identified as the ones Plaintiff could perform.  The crux of Plaintiff's argument is that because the VE could not satisfactorily explain how SkillTran converts BLS data into DOT job numbers, his testimony cannot amount to substantial evidence to meet the Commissioner's burden at step five.

After a close reading of the hearing transcripts, the Court agrees with the Commissioner that Plaintiff's argument that the VE did not know how the program works in not borne out in the record.  The VE – while fully acknowledging that he was not an expert statistician – explained that the numbers SkillTran produces are based on BLS data, and explained how BLS data is

compiled. (R. 47, 117-118). The VE went on to provide testimony as to how the program works: SkillTran takes BLS data and isolates a DOT code through an "occupational density process" to identify the number of jobs available in the local and national economies. (R. 127-128). The VE went on to emphasize that his experience, consisting of thirty years in the field, corroborates the numbers SkillTran produces. (R. 47-48, 116). He also explained that his experience supports a finding that the numbers and classifications of jobs on SkillTran are representative of jobs in the economy. (R. 121, 128).

While the VE may not have explained, "in precise technical detail, how the [SkillTran] system worked, [he] explained why [he] thought that the underlying data was reliable and endorsed the numbers derived therefrom as accurate." *See Poisson v. Astrue*, No. 2:11-CV-245-NT, 2012 WL 1067661, at *9 (D. Me. Mar. 28, 2012) *report and recommendation adopted sub nom. Poisson v. Soc. Sec. Admin. Com'r*, No. 2:11-CV-00245-NT, 2012 WL 1416669 (D. Me. Apr. 24, 2012) (finding that in such a circumstance, a VE's testimony as to job numbers was "sufficiently reliable to support a Step 5 finding."); *see also Lesner v. Colvin*, No. 12 C 7201, 2015 WL 5081267, at *8 (N.D. Ill. Aug. 24, 2015) (upholding the Commissioner's step five finding when the VE identified SkillTran as the source of her numbers, finding that in so doing the VE "was not relying solely on her personal experience or on any other untestable means.").

In addition, Plaintiff had sufficient opportunity to voice his objections to the VE's testimony. In fact, the ALJ held an additional hearing precisely for that purpose. *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 450 (2d Cir. 2012) ("assuming *arguendo* [claimant] had a right to have the ALJ consider his challenge to the VE, that is exactly what the ALJ did.").

Plaintiff further argues that the ALJ was impartial in her questioning of the VE during the hearing.[4] The Court disagrees. Rather, the transcript reveals that the ALJ asked questions about the basis for the VE's opinion in an effort to ascertain the reliability of that opinion. This is what Plaintiff's counsel is arguing here that the ALJ *should have* done; by asking the VE whether his knowledge and experience corroborates the information from SkillTran, the ALJ was, it seems, attempting to ensure that the VE's opinion was reliable in that it was supported both by data and by the VE's knowledge and experience.

Finally, while the Court appreciates Plaintiff's counsel's advocacy for his client, and understands his desire for a more stringent process for testing the reliability of vocational experts in the Social Security disability context[5], the law in this Circuit simply does not require the level of inquiry and scrutiny Plaintiff seeks. *See Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008) (explaining that when a VE identifies the sources he generally consulted to determine the number of jobs available, he is not required to "identify with greater specificity the source of his figures or to provide supporting documentation."); *Jones-Reid*, 934 F. Supp. 2d at 407 (finding that when a VE "utilized reliable statistical sources as well personal knowledge and experience to develop the occupational projections provided," a "step-by-step description of the methodology used" was not required.); *Brault*, 683 F.3d at 449-50 (employing a substantial evidence standard for evaluating a VE's testimony rather than a more stringent *Daubert* rule); *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (holding that "a vocational expert is not required to identify

---

[4] Plaintiff also argues that the ALJ improperly attempted to bolster the VE's testimony by citing to memo 09-2139 in her decision. This memo, dated December 28, 2009, was written to Social Security Administration Regional Management Officers from the Director of the Division of Field Procedures. The subject of the memo was "Use of Electronic Occupational References for Administrative Law Judge and Senior Attorney Adjudicator Decisions." The Court finds no error in the ALJ's use or characterization of this memo.

[5] The Court does indeed wonder where one might find a position as a tube operator or envelope addresser in 21st century Connecticut.

with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally."). Substantial evidence supports the step five finding.

## Conclusion

After a thorough review of the administrative record and consideration of all of the arguments raised by Plaintiff, the Court concludes that the ALJ did not commit any legal errors and that her decision is supported by substantial evidence. Accordingly, the Court recommends that Defendant's Motion to Affirm the Decision of the Commissioner [Doc. # 18] should be granted and that Plaintiff's Motion to Reverse [Doc. # 17] should be denied.

This is a Recommended Ruling. *See* Fed. R. Civ. P. 72(b)(1). Any objection to this Recommended Ruling must be filed within 14 days after service. *See* Fed. R. Civ. P. 72(b)(2). In accordance with the Standing Order of Referral for Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to transfer this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or modification of the Recommended Ruling in whole or in part. *See* Fed. R. Civ. P. 72(b)(3) and D. Conn. Local Rule 72.1(C)(1) for Magistrate Judges.

SO ORDERED, this   13th   day of January, 2016, at Bridgeport, Connecticut.

  */s/ William I. Garfinkel*
 WILLIAM I. GARFINKEL
 United States Magistrate Judge